**EARP COHN P.C.**
20 Brace Road, 4th Floor
Cherry Hill, New Jersey 08034
(856) 354-7700
(856) 354-0766 facsimile

Attorneys for Plaintiff Balmoral Financial Corporation

**By:     DOUGLAS F. JOHNSON, ESQUIRE (DJ7587)
         NANCY E. MONTE CARLO, ESQUIRE (NM3452)**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BALMORAL FINANCIAL CORPORATION<br>20 Park Road, Suite F<br>Burlingame, CA 94010<br>                 Plaintiff,<br><br>     v.<br><br>PRESTIGE CAPITAL CORPORATION<br>2 Executive Drive<br>Fort Lee, NJ 07024<br>               Defendant. | CIVIL ACTION NO.: 04-cv-520 (WGB) |

### AMENDED COMPLAINT

Plaintiff, Balmoral Financial Corporation ("Balmoral"), by and through its undersigned attorneys, Earp Cohn P.C. state by way of its amended complaint against Defendant, Prestige Capital Corporation ("Prestige"), as follows:

### PARTIES AND JURISDICTION

1.      Plaintiff Balmoral is a California corporation authorized to and doing business in the State of California, with its principal place of business located at 20 Park Road, Suite F Burlingame, California.

2.      Prestige Capital Corporation is a New Jersey corporation authorized to and doing business in New Jersey, with its principal place of business located at 2 Executive Drive

Fort Lee, New Jersey.

3.      The matter in controversy exceeds the sum of $75,000.00, exclusive of interest
and costs.

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.
§1332, in that there is diversity of citizenship between the parties.

5.      Venue is proper pursuant to 28 U.S.C. §1391 because the Defendant does
business in the District of New Jersey, the Plaintiff does business in the District of New Jersey
and the claim arose in the District of New Jersey.

## FACTUAL BACKGROUND

6.      On March 20, 2001, Balmoral entered into a Participation Agreement
("the Participation Agreement") with Prestige, whereby Prestige would enter into Purchase and
Sale Agreements, called Factoring Agreements, with Orion Telecommunications Corporation
("Orion"), in which Balmoral would participate.  A copy of this Participation Agreement is
attached hereto as Exhibit "A."

7.      The funds provided by Balmoral and Prestige are loaned to, and used by, Orion to
finance its ongoing business operations.

8.      Under the Participation Agreement, Balmoral agreed to purchase from Prestige an
undivided fractional interest in each of the Receivables ("Approved Receivables") approved by
Balmoral under the terms of the Agreement.

9.      According to the terms of the Participation Agreement, Balmoral would initially
purchase a fifty percent (50%) interest, not to exceed $500,000.00, in the Approved Receivables
set forth on Schedule I of the initial agreement.

10.     Additional or replacement Receivables ("Receivables") would be purchased by
Balmoral only upon written agreement to such by Balmoral.

11.     The Participation Agreement included a Participation Percentage interest in all

2

amounts received by Prestige including, without limitation, in payment of the Approved
Receivables purchased by Prestige under the Participation Agreement and in payment of other
obligations of Orion.

12.     Section 2.2(a) of the Participation Agreement defines Balmoral's participation

interest as an interest in following:

(a)     amounts received by Factor (Prestige) from account debtors or the clients
(Orion) in payment of the Approved Receivables;

(b)     amounts received by Factor (Prestige) in payment of interest, fees,
commissions and the like owing by Client (Orion) under the Factoring
Agreement with respect to Approved Receivables (collectively the
"Commissions");

(c)     amounts received by Factor (Prestige) through realization upon other
security, if any, shall be shared by Factor (Prestige) and Participant
(Balmoral) pro rata in accordance with their respective Participations in
the Receivables; and

(d)     amounts received by Factor (Prestige) from Guarantors under all
guaranties of the Client's (Orion's) obligations to Factor (Prestige) under
the Factoring Agreements shall be shared by Factor and participant pro
rata in accordance with their respective participations in the Receivables.

13.     The procedure for the Factoring Agreement is set forth in Section 3 and states that

the list of Receivables which Prestige proposes to sell to Balmoral will be delivered to Balmoral

not later than two business days prior to the proposed sale.

14.     Pursuant to the Participation Agreement, within two days, Balmoral shall advise

Prestige as to its decision regarding the purchase of a Participation in any such Receivables and

will pay Prestige the purchase prices for its participation in any such Approved Receivables.

15.     Pursuant to the Participation Agreement, on Monday of each week, Participation

Reports with appropriate schedules attached will be delivered by Prestige to Balmoral showing

for the period since the last report, the status of the account with as much detail as Balmoral may

reasonably request.  In each report, Prestige will credit against the purchase price the amount of

Balmoral's interest in any collections reported.

16. Section 4 governs Management and states as follows:

4.3 Factor (Prestige) shall not, without the prior written consent of Participant (Balmoral) (a) amend, modify, supplement or change the Factoring Agreements; (b) release, satisfy, waive or discharge the Client (Orion) or any collateral or guaranty of any kind which Factor (Prestige) may at any time hold, or claim or demand against the Client (Orion) or against any guarantor or surety for the Client (Orion) to the extent that same apply to Receivables, except upon payment in full; and (c) compromise with any account debtor any Approved Receivables.

17. Section 6 governs Termination and states as follows:

6.1 Either Participant (Balmoral) or Factor (Prestige) may, at any time, upon not less than sixty (60) days' prior written notice to the other party, terminate as of the day named in such notice its obligation hereunder to make further purchases or sales (as the case may be) of Participations in the Receivables.

6.2 From and after the effective date of such termination, neither Participant (Balmoral) nor Factor (Prestige) shall be obliged to make any further purchases or sales (as the case may be) of Participations in the Receivables, but the provisions of the Participation Agreement shall continue to apply with respect to all Approved Receivables in which Participant shall own Participations at the effective date of termination.

6.3 Upon the effective date of termination, Factor (Prestige) will have the option to repurchase from Participant all of its Participations in the Approved Receivables then outstanding at a price equal to: (a) participant's investment in the Approved Receivables (i.e. its Participation Percentage of the purchase price for the advance amount against the Approved Receivables), plus (b) its Participation Percentage of the non-refundable portion of the Commissions calculated as if the Approved Receivables were paid in full on the effective date of termination, less (c) all amounts paid to Participant out of Collections related to such Approved Receivables.

18. Section 7.4 under Miscellaneous states as follows:

This agreement shall be governed by the laws of the State of New Jersey, shall not be amended except by a writing signed by both Factor (Prestige) and Participant (Balmoral), may be executed in several counterparts, each of which shall be deemed to be an original, and shall inure to the benefit of and be binding upon their respective successors and assigns. The parties hereto consent to the jurisdiction of the Courts of the State of New Jersey or the United States District Court for the District of New Jersey and further consent that any process or notice or other application to any court or a judge thereof may be served within or without the State of New Jersey by certified mail or by personal service, provided

4

a reasonable time for appearance is allowed.  Factor (Prestige) and Participant (Balmoral) each hereby waive their right to a trial by jury with respect to any legal

proceeding arising out of or in connection with this Agreement.

19.     On April 30, 2001, the Participation Agreement was amended in writing to change Section 2.1 so that the Participation shall be 50% not to exceed $750,000.00.  A copy of this amendment is attached hereto as Exhibit "B."

20.     On May 17, 2001, the Participation Agreement was amended in writing to change Section 2.1 so that the Participation shall be 50% not to exceed $1,250,000.00.  A copy of this amendment is attached hereto as Exhibit "C."

21.     On January 7, 2002, the Participation Agreement was amended in writing to change Section 2.1so that the Participation shall be 50% not to exceed $1,500,000.00.  A copy of this amendment is attached hereto as Exhibit "D."

22.     On March 18, 2002, the Participation Agreement was amended in writing to change Section 2.1so that the Participation shall be 50% not to exceed $2,000,000.00.  A copy of this amendment is attached hereto as Exhibit "E."

23.     On June 17, 2002, the Participation Agreement was amended in writing to change Section 2.1 so that the Participation shall be 50% not to exceed $2,500,000.00.  A copy of this amendment is attached hereto as Exhibit "F."

24.     On October 7, 2002, the Participation Agreement was amended in writing to change Section 2.1so that the Participation shall be 50% not to exceed $3,000,000.00.  A copy of this amendment is attached hereto as Exhibit "G."

25.     On April 15, 2003, Balmoral exercised its right to terminate the Participation Agreement and provided the 60 days notice to Prestige.

26.     On September 12, 2003, Balmoral and Prestige executed an Agreement, reducing the maximum participation to $1,700,000.00 and contracting for a commission payable to Balmoral of 24 % per annum.  A copy of this Rescission of Termination and Amendment to

Participation Agreement is attached hereto as Exhibit "H."

## COUNT I - BREACH OF CONTRACT

27.    Balmoral repeats and incorporates by reference paragraphs 1 through 26 of its Amended Complaint as if set forth at length herein.

28.    On or about October 15, 2003, Balmoral again exercised its right to terminate the Participation Agreement and provided the requisite 60 days notice of such termination to Prestige.  A copy of this Termination Notice is attached hereto as Exhibit "I."

29.    Pursuant to the Participation Agreement, Prestige was to repurchase from Balmoral its interest in any outstanding Approved Receivables to date, or to issue payment to Balmoral in pro rata share, of the outstanding Approved Receivables as payment is issued to Prestige.

30.    At the time of termination, Balmoral's interest in outstanding Approved Receivables amounted to $1,700,000.00.

31.    On December 15, 2003, Prestige owed to Balmoral $1,700,000.00 under the terms of the Participation Agreement.

32.    Balmoral has demanded payment on its outstanding Approved Receivables be made according to the Participation Agreement.

33.    Prestige has failed and refused to make payment, as it receives funds from Orion, but has instead notified Balmoral that it is continuing to provide it with new substituted Orion Receivables as older Approved Receivables are paid off.

34.    Balmoral has never agreed to accept substituted Orion Receivables from Prestige, and in fact, has notified Prestige of its objection to substituted receivables.

35.    Prestige has breached the terms of the Participation Agreement by failing and refusing to make payment on the existing Approved Receivables.

36.    Balmoral has suffered damages from this breach of contract, and will continue to suffer such damages until Prestige upholds the Participation Agreement.

WHEREFORE, Plaintiff Balmoral Financial Corporation demands judgment against Defendant Prestige Capital Corporation as follows:

(a)     an order directing Defendant Prestige to make payment of $1,700,000.00 plus commission at the contractual rate to Plaintiff Balmoral;

(b)     imposition of a constructive trust upon the proceeds or other substituted Orion receivables;

(c)     an accounting;

(d)     imposition of a receiver for the management of the Orion Receivables;

(e)     consequential damages to be determined by the Court;

(1)     failed to make payment;

(2)     provided with original new receivables; and

(3)     provided no schedule of Receivables;

(f)     attorneys' fees and costs of suit; and

(g)     such other relief as the Court shall deem appropriate.

## COUNT II - CONVERSION

37.     Balmoral repeats and incorporates by reference paragraphs 1 through 36 of its Amended Complaint as if set forth at length herein.

38.     Pursuant to the Termination clause of the Participation Agreement, Balmoral is rightfully entitled to payment of its interest in outstanding Approved Receivables in the amount of $1,700,000.00.

39.     Prestige has wrongfully exercised ownership over this amount and has converted it to its exclusive use.

40.     This unauthorized use of these funds by Prestige has deprived Balmoral of its property.

WHEREFORE, Plaintiff Balmoral Financial Corporation demands judgment against Defendant Prestige Capital Corporation as follows:

7

(a)     an order directing Defendant Prestige to make payment of $1,700,000.00 plus commission at the contractual rate to Plaintiff Balmoral;

(b)     imposition of a constructive trust upon the proceeds or other substituted Orion receivables;

(c)     an accounting;

(d)     imposition of a receiver for the management of the Orion Receivables;

(e)     consequential damages to be determined by the Court;

    (1)     failed to make payment;

    (2)     provided with original new receivables; and

    (3)     provided no schedule of Receivables;

(f)     attorneys' fees and costs of suit; and

(g)     such other relief as the Court shall deem appropriate.

## COUNT III - BREACH OF FIDUCIARY DUTY

41.     Balmoral repeats and incorporates by reference paragraphs 1 through 40 of its Amended Complaint as if set forth at length herein.

42.     Section 3.4 of the Participation Agreement states as follows:

> The purchases and all collateral as shall be retained by Factor in its own name, but to the extent of Participant's interest therein as agent of and trustee for participant and subject to participant's right with respect thereto as herein set forth.

43.     Pursuant to this section, Prestige acts as the agent and trustee for Balmoral.

44.     Prestige has violated Section 3.4 of the Participation Agreement and has breached its fiduciary duty as agent and trustee for Balmoral, in failing to pay Balmoral for its interest in Approved Receivables.

45.     Prestige has also violated Section 3.4 of the Participation Agreement and its fiduciary duty to Balmoral by permitting the substitution of other receivables for the Approved Receivables as of the date of termination, without paying to Balmoral its interest in the Approved

8

Receivables in accordance with the Agreement.

46.     Prestige has also violated Section 3.4 of the Participation Agreement by failing to turn over the proceeds of Approved Receivables to Balmoral, as paid by Orion.

WHEREFORE, Plaintiff Balmoral Financial Corporation demands judgment against Defendant Prestige Capital Corporation as follows:

(a)     an order directing Defendant Prestige to make payment of $1,700,000.00 plus commission at the contractual rate to Plaintiff Balmoral;

(b)     imposition of a constructive trust upon the proceeds or other substituted Orion receivables;

(c)     an accounting;

(d)     imposition of a receiver for the management of the Orion Receivables;

(e)     consequential damages to be determined by the Court;

(1)     failed to make payment;

(2)     provided with original new receivables; and

(3)     provided no schedule of Receivables;

(f)     attorneys' fees and costs of suit; and

(g)     such other relief as the Court shall deem appropriate.

### COUNT IV - IMPOSITION OF A CONSTRUCTIVE TRUST

47.     Balmoral repeats and incorporates by reference paragraphs 1 through 46 of its Amended Complaint as if set forth at length herein.

48.     Prestige has wrongfully transferred Balmoral's funds to its own use and enjoyment.

49.     As a result of this wrongful transfer, Prestige is unjustly enriched by use of Balmoral's funds.

50.     A constructive trust should be enforced upon the account receivables of Orion to prevent unjust enrichment to Prestige and force restitution to Balmoral of funds to which Prestige

is not entitled.

WHEREFORE, Plaintiff Balmoral Financial Corporation demands judgment against Defendant Prestige Capital Corporation as follows:

    (a)    an order directing Defendant Prestige to make payment of $1,700,000.00 plus commission at the contractual rate to Plaintiff Balmoral;

    (b)    imposition of a constructive trust upon the proceeds or other substituted Orion receivables;

    (c)    an accounting;

    (d)    imposition of a receiver for the management of the Orion Receivables;

    (e)    consequential damages to be determined by the Court;

        (1)    failed to make payment;

        (2)    provided with original new receivables; and

        (3)    provided no schedule of Receivables;

    (f)    attorneys' fees and costs of suit; and

    (g)    such other relief as the Court shall deem appropriate.

## <u>COUNT V - ACCOUNTING</u>

51.    Balmoral repeats and incorporates by reference paragraphs 1 through 50 of its Amended Complaint as if set forth at length herein.

52.    Balmoral has made demand under the Participation Agreement for payment of its outstanding Approved Receivables.

53.    Prestige has failed and refused to make such payment in breach of the Participation Agreement.

54.    An accounting of the books and records of both Prestige and Orion is necessary in order to ascertain the financial status of both corporations for payment to be made to Balmoral and identification of the substituted Orion Receivables.

WHEREFORE, Plaintiff Balmoral Financial Corporation demands judgment against

Defendant Prestige Capital Corporation as follows:

(a) an order directing Defendant Prestige to make payment of $1,700,000.00 plus commission at the contractual rate to Plaintiff Balmoral;

(b) imposition of a constructive trust upon the proceeds or other substituted Orion receivables;

(c) an accounting;

(d) imposition of a receiver for the management of the Orion Receivables;

(e) consequential damages to be determined by the Court;

    (1) failed to make payment;

    (2) provided with original new receivables; and

    (3) provided no schedule of Receivables;

(f) attorneys' fees and costs of suit; and

(g) such other relief as the Court shall deem appropriate.

## COUNT VI - IMPOSITION OF A RECEIVER

55. Balmoral repeats and incorporates by reference paragraphs 1 through 54 of its Amended Complaint as if set forth at length herein.

56. Pursuant to the Participation Agreement, Balmoral and Prestige each have a 50% interest in the Approved Receivables of Orion.

57. The Participation Agreement constitutes a partnership between Balmoral and Prestige.

58. Due to Prestige's failure to perform its obligations under the Termination section of the Participation Agreement, the two partners' interests are in conflict, pursuant to N.J.S.A. 42:4-1 et seq.

59. A receiver must be imposed to manage the Orion Receivables pending the final disposition of this action, pursuant to N.J.S.A. 42:4-7 et seq.

WHEREFORE, Plaintiff Balmoral Financial Corporation demands judgment against

Defendant Prestige Capital Corporation as follows:

(a)   an order directing Defendant Prestige to make payment of $1,700,000.00 plus commission at the contractual rate to Plaintiff Balmoral;

(b)   imposition of a constructive trust upon the proceeds or other substituted Orion receivables;

(c)   an accounting;

(d)   imposition of a receiver for the management of the Orion Receivables;

(e)   consequential damages to be determined by the Court;

   (1)   failed to make payment;

   (2)   provided with original new receivables; and

   (3)   provided no schedule of Receivables;

(f)   attorneys' fees and costs of suit; and

(g)   such other relief as the Court shall deem appropriate.


DATE: March 25, 2004


s/ Douglas F. Johnson
DOUGLAS F. JOHNSON, ESQUIRE
NANCY E. MONTE CARLO, ESQUIRE
**EARP COHN P.C.**
20 Brace Road, 4th Floor
Cherry Hill, New Jersey 08034
(856) 354-7700
(856) 354-0766 facsimile

Attorneys for Balmoral Financial Corporation


G:\Staff\nmontecarlo\NMonteCarloDocs\Balmoral\PLEADINGS PRESTIGE\amended complaint.wpd